## James Lynn, Appellant, v. Ralpho Township.

*Negligence—Township—Highway—Snowdrift.*

In an action against a township to recover damages for personal injuries, it appeared that an extraordinary snowstorm had caused a deep drift of snow at a point on a highway where plaintiff was injured. The snowstorm ceased upon a Sunday, and on Monday the supervisors opened up the drift so as to permit the passage of a sleigh, and a day or two afterwards they widened it. Some of plaintiff's witnesses testified that they made it wide enough to permit the passage of two sleighs side by side. Prior to the accident a large number of persons passed through the cut. At the time of the accident plaintiff was riding in a sleigh driven by his grandson. The evidence showed that in going through the cut the runner of the sleigh passed up on the bank at the side of the cut, and that the sleigh in this way was turned over. Plaintiff was injured by the turning of the sleigh. *Held*, that there was no error in directing a verdict for the defendant.

Argued May 24, 1898. Appeal, No. 416, Jan. T., 1898, by plaintiff, from judgment of C. P. Northumberland Co., May T., 1896, No. 436, on verdict for defendant. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Trespass for personal injuries. Before SAVIDGE, P. J.

The facts appear by the charge of the court below which was in part as follows:

The injury for which the plaintiff asks damage from the defendant, occurred on the night of February 16, 1895, and was occasioned by the overturning of a sleigh in which he was being conveyed by his grandson from a church where he had been attending services to the home of his daughter, some three or four miles distant. The point at which the accident occurred was three or four hundred feet from the church, on what is known as the Paxinos and Elysbury road, and about the same distance from the point where this road leads into the Danville turnpike, the said turnpike constituting the main thoroughfare through the village of Elysburg. There had been an extraordinary snowstorm, beginning on the Thursday a week preceding the accident and continuing until the Saturday or Sunday preceding the accident. It is unquestioned that this was the severest storm experienced in many years. Not only was the fall of snow unusual, but there was an extraordinary amount of drifting, so that the roads all through the country were filled with drifted snow, and were in an impassable condition. At the point of the accident there was a drift lying across the road diagonally, according to the undisputed testimony, for a distance of about fifteen feet. On either side of this drift the road was comparatively free from snow, so that teams could pass and repass easily, and go upon any portion of the road to its full width. That is not disputed by the plaintiff. It became necessary, after the storm had subsided, to open the highways of the township, and the supervisors accordingly began to do this on Monday morning. There is no pretense that they did not act promptly in this behalf, it not being contended that they could have begun the performance of their duties at an earlier period, the storm having subsided late on Saturday, or, perhaps, not until sometime on Sunday.

It is the duty of the supervisors to keep their roads clear of impediments, generally speaking, so that persons having occasion to be upon them may travel to and fro with safety. They must make them so as to be easy and convenient to the passage of the traveling public. But this must be reasonably understood. Where the clearing of the public highways of all impediments would be impossible, it is not required at the hands of the authorities. There is no allegation on the part of the plaintiff that the road at this point was out of repair, and all the testimony, both of the plaintiff and of the defendant, shows that this road was in perfect repair at the time, and at all times was one of the best pieces of road in the township. It is not on that account that the authorities are complained of. The alleged dangerous condition was wholly on account of the snow bank in the road. On Monday, according to the undisputed testimony, a way was cut through this bank sufficient to permit of the passage of a sleigh or sled, and a day or two on, the cut was widened. There is a mass of testimony here, offered both on the part of the plaintiff and defendant, to show that this passageway was not only wide enough for a single sleigh or sled to pass through, but for two sleighs to pass, going in opposite directions. Several witnesses for the plaintiff testified that way. I do not know of any testimony of any witness offered on behalf of the plaintiff to the effect that there was not at least sufficient room for a single sleigh to pass through.

There had been a protracted meeting in progress at one of the churches at Elysburg, prior to the snowstorm, which had been interrupted for a few days during or subsequent to the storm, but reopened two or three days prior to the date of the accident. During the latter part of the week of the accident many people had driven to and fro through this cut in the snow, and there can be no question that the road was opened there at least of sufficient width for the passage of a sleigh or sled in safety. As many as sixty vehicles came and went each evening to and from the church. Some of the witnesses say as many as one hundred. It cannot be pretended that the way was unsafe, provided the traveler kept to the beaten track, because there is no evidence to show any considerable unevenness in the beaten track of the passageway cut through this bank by the supervisors. The driver, the plaintiff's grandson, accounts

for the accident in this way : he says the runner of the sleigh passed up on the bank, which is to say that he got out of the beaten track, and that when it so passed up on the bank at the side of the track the sleigh turned over. This was corroborated by the testimony of one or more of the defendant's witnesses, who say that they saw there the next morning the mark of the runner where it passed up on the bank of snow at the side of the road opened up by the supervisors. . . .

No necessity exists for the opening of the road to its entire width and in most instances, in the case of such a storm as this, it would be impossible for the supervisors to open the roads over the township within a reasonable time if they were required to shovel the snow off the way from side to side ; and as they are bound, with reasonable promptitude to open up all the public ways of the township, this could not be done. . . . Hence, I cannot resist the conclusion, drawn from the plaintiff's testimony, unaided by that offered by the defendant, that the supervisors did their full duty in the premises. . . .

Having, therefore, failed to show negligence in the supervisors, the plaintiff cannot be permitted to recover.

There is another reason why, perhaps, a verdict could not be permitted for the plaintiff, even though neglect had been shown on the part of the supervisors. It is a principle of law that where the plaintiff himself is negligent he cannot recover, no matter how culpable the negligence of the defendant. I am inclined to think that the case shows neglect on the part of the plaintiff. It is true he was not the driver. It is true that he would not be responsible for the negligence of the driver under the law, and had he passed through this cut in the snow a mere passenger by invitation, without knowledge of the condition of the road, there could be no negligence imputed to him ; but he knew the condition of this road, according to his own testimony. He had passed over it several times within three or four days preceding the accident. He had passed over it on foot and in vehicles and he was bound to take notice of its condition, under the law, so that the law visits him with the knowledge of what the actual condition of that road was at that time. Had it been a dangerous road he should have called the attention of the driver to the fact, and should either have required the driver to get out and examine and look ahead, or gotten out himself, or

should have been looking out. To say the least of it, if he chose to remain in the sleigh, he should have been looking out for danger as he passed through. This, according to his own testimony, he did not do, and as there was a safe passage it was the duty of the driver to see to it that he kept himself in the passageway provided.

It is true it was dark, but that is no excuse. Both the driver and Mr. Lynn knew the condition of that road. They knew it could be passed safely in the daytime, and if they undertook to pass it in the night-time when it was dark they should have used care accordingly. If it was necessary for the driver to get out, that much was required of him. But I am inclined to think from the testimony that he undertook to turn out to pass Mrs. Walise, her sister and a gentleman now in the West, who were passing through ahead of him. That would seem pretty clear from all the testimony in the case. If he undertook to pass by them in this place knowing what was there, that on each side there was a bank of snow, and knowing if one of the runners mounted the bank the sleigh would turn over; in all probability, he undertook that passage at his peril, because it was not necessary. It was only about fifteen feet through this cut. All the testimony on both sides shows that. They were both going in the same direction and there was no occasion for him to undertake to pass them. All he had to do was to follow them through. If it was a dangerous place, ordinary prudence would require that he should not go faster than a walk, especially as the passage was so short, and it cannot be pretended that there was any necessity for him to undertake to pass these people who were going through there on foot. If he undertook to do so, as we may fairly conclude from all the testimony in the case, and in the attempt drove on the bank, he took the risk, and could not complain even though negligence on the part of the supervisors had been shown, which, as I have stated to you before, I cannot allow.

It has been contended that it was the duty of the supervisors to either blockade this road or exhibit danger signals. I do not think it was their duty to do either. The road was opened of sufficient width under the circumstances through this bank. Everybody knew of a storm of this kind; it was common knowledge, and the plaintiff knew of it. He knew the roads had

drifted, and he knew of this very drift. It was the duty of every traveler on that road to be on the lookout for drifts and snow banks and narrow ways through them. It is a matter of common knowledge that is the ordinary method of opening roads in the country; that is, to open them of sufficient width for a sleigh to pass through in safety, and not the entire width of the road; and travelers upon the township roads are bound to expect that the roads are opened in the usual and ordinary way, and not that they are opened out the entire width. And I question whether a stranger to that particular road, if he had met with an accident in passing through a drift of this kind, could have attributed negligence to this defendant by reason of its supervisors not hanging out danger signals. However that may be, this plaintiff cannot, because he knew of the danger as well as the supervisors, and the signals would have given him no more knowledge than he had.

If this had been a street in a town or a city the case would have been different. The rule is different there. Municipal authorities are obliged to open up their streets as soon as they conveniently and reasonably can to their full width. They are required to do this because it is reasonable and right, and for the same reason the supervisors having charge of country roads, covering many miles, exposed and drifted, shut and closed, by the snow during any severe storm are not required to open up their ways to the full width. Why? Because it would not be reasonable and right to require it, and because there is no necessity for it, as there is in a city and a town; because it would be a greater burden than the people ought to stand or could stand, and because it never has been the custom to open up public roads in this way.

The counsel for the plaintiff has cited the case of Susan Carr v. City of Easton, 142 Pa. 139. In that case the question of defendant's negligence was not passed upon by the Supreme Court, and I rule this case mainly on that question. The case was sent back with a new venire, and we may reasonably suppose that the Supreme Court thought that there was sufficient evidence of defendant's negligence to submit the case to the jury, or they would not have sent it back. That was a city, and the way opened there, if I remember correctly, was over the street car tracks, in the center of the street, and practically

on the line of the street car tracks. The same rule that would hold there does not maintain as to country roads. In the borough of Carlisle against Brisbin, cited by plaintiff's counsel, the injury was occasioned by a stone pile in the center of the street, left there by the borough authorities negligently, and covered with snow. In the case of Erie City against Schwingle there was such evidence as showed that the road provided to the water's edge was insufficient in width for travel, and the case had to be left to the jury on the question of the defendant's negligence.

The cases cited are different from the one before us. Here, in my judgment, there is no evidence to show that under all the circumstances, considering the extent of the storm, its severity, the unusual piling up of the snow in the roads all over the township and everywhere else in the country, it being conceded that aside from the drift the road was in perfect condition—the supervisors have been negligent in the performance of their duty.

[Now I may be wrong in my conclusions. I have kept close run of the testimony, and I have given full weight to the argument of counsel for the plaintiff and to his authorities ; on an occasion of this kind, the defendants were required to do no more than they actually did, by opening up this way through this bank where hundreds of teams had passed to and fro in safety, and where beyond all question a team could pass if driven with reasonable care. Hence I say to you that your verdict should be for the defendant and you may return your verdict accordingly.] [5]

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* among others was (5) above instruction, quoting it.

*S. B. Boyer*, for appellant.—It was the province of the jury under proper instruction from the court to pass upon the evidence. We hold that the court had no power to receive countervailing evidence so as to withdraw the plaintiff's evidence from the jury : Fisher v. Kean, 1 Watts, 278 ; Day v. Sharp, 4 Wharton, 339 ; Cummings v. Cummings, 5 W. & S. 553.

In the case of Erie City v. Schwingle, 22 Pa. 384, the facts were almost identical with the case under consideration.

We claim that the supervisors knew of the meeting and the large gathering of people; that it was, therefore, their duty to see that this road in question was in a safe condition, and if not safe to place danger signals so as to warn people driving through it of the danger. Failing to do so was negligence on their part: Carr v. Easton, 142 Pa. 139.

*L. S. Walter* and *P. A. Vought*, for appellee, were not heard, but cited in their printed brief: Penna. Road Law by Trickett, 287; Brendlinger v. New Hanover Twp., 148 Pa. 93; Elliott on Streets and Roads, 652; Monongahela City v. Fischer, 111 Pa. 14; Mueller v. Ross Twp., 152 Pa. 399; Crescent Twp. v. Anderson, 114 Pa. 643; Dean v. R. R. Co., 129 Pa. 514.

PER CURIAM, May 30, 1898:

It must be conceded that plaintiff assumed the burden of proving that the township officers were guilty of negligence in not properly opening the highway at the place where the accident occurred, and that such negligence was the proximate cause of the injury of which he complains.

A careful examination of the evidence on which plaintiff relied for that purpose has failed to convince us that the learned trial judge erred in holding that it was insufficient to justify submission of the question of the township officers' negligence to the jury. There was therefore no error in directing a verdict in favor of the defendant.

This view of the case makes it unnecessary to consider the specifications of error in detail. They are all dismissed and the judgment entered on the verdict is affirmed.